UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| X. WEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-0852-B |
| | § | |
| SANQUEST, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant SanQuest, Inc. ("SanQuest")'s Motion to Dismiss (Doc. 11). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.

## BACKGROUND

This case is about forced labor. Plaintiff X. Wen is a Chinese national who attended college in the United States on a student visa. Doc. 9, Am. Compl., ¶¶ 9–11. While in the United States, Wen obtained Optional Practical Training ("OPT") status from the United States Citizen and Immigration Services ("USCIS"). *Id.* ¶ 12. This program allows foreign nationals living in the United States on a student visa to work in a position directly related to the student's area of study for 12 months. *See* 8 CFR 214.2(f)(10).

Wen began working for SanQuest, a staffing agency, after the USCIS approved her request for OPT work status. Doc. 9, Am. Compl., ¶¶ 12, 14. Immediately after hiring Wen, SanQuest instructed Wen to "mass-apply for jobs and contract vendors." *Id.* ¶ 19. Wen applied for a job with a company called Artech, LLC ("Artech"). *Id.* ¶¶ 19, 36. SanQuest then signed a contract with Artech

on Wen's behalf "without her knowledge and/or consent." *Id.* ¶ 36. Artech agreed to pay Wen $65 an hour. *Id.* ¶ 39. Wen remained employed by SanQuest while she was working for Artech. *See id.*

At all relevant times, Wen was defined as an at-will employee at SanQuest. *Id.* ¶ 27.  Over the course of her SanQuest employment, Wen was required to sign various employment agreements, including a "Training and Marketing Agreement" and a "Staffing Agreement." *Id.* ¶¶ 16, 30–31. The Training and Marketing Agreement provides that Wen would be required pay SanQuest a $5,000 fee if SanQuest terminated her. *Id.* ¶ 24. The Staffing Agreement contained various terms that Wen believed were "oppressive and ambiguous." *Id.* ¶ 32. One such term required Wen to pay SanQuest $36.15 an hour for every hour she worked at Artech. *Id.* ¶ 34. This meant that Wen was taking home $28.85 an hour from Artech. *Id.* ¶¶ 34, 39. The Staffing Agreement also contained a liquidated damages provision, which required Wen to pay SanQuest $35,000 if she breached the agreement—i.e., if Wen quit her job at SanQuest. *Id.* ¶ 32.

Wen asserts seven causes of action. Count 1 of her Amended Complaint is a cause of action alleging SanQuest forced her to provide labor in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589(a). *Id.* ¶¶ 55–71.  Count 2 alleges that SanQuest knowingly benefitted from participating in a venture that forced Wen to provide labor, in violation of 18 U.S.C. § 1589(b). *Id.* ¶¶ 72–86.  Count 3 alleges that SanQuest "knowingly recruited" Wen for labor in violation of the TVPA, 18 U.S.C. § 1590(a). *Id.* ¶¶ 87–100. Count 4 alleges that SanQuest attempted to violate the TVPA, which is prohibited under 18 U.S.C. § 1594(a). *Id.* ¶¶ 101–12. Counts 5 through 7 of the Amended Complaint each allege that SanQuest violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). *Id.* ¶¶ 113–86.

SanQuest moves to dismiss each of Wen's claims for failure to state a claim. Doc. 11, Mot.

SanQuest argues that all four of Wen's TVPA claims should be dismissed because Wen has not alleged that SanQuest forced her to provide labor. *See id.* at 4, 6, 9. SanQuest also argues that Wen fails to state a RICO claim. *Id.* at 11. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has

alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted) (citation omitted).

### III.

### ANALYSIS

The Court grants in part and denies in part SanQuest's Motion to Dismiss. Wen stated a claim under the TVPA because she has alleged that she was forced to continue working for SanQuest under threats of serious financial harm. But Wen failed to state a RICO claim because she has not adequately alleged that any enterprise exists that is separate and distinct from SanQuest. The Court dismisses her RICO claims with prejudice.

A.    *Wen Alleges Sufficient Facts to State a Claim under the TVPA.*

As a preliminary matter, Wen purportedly asserts four claims under four criminal statutes—18 U.S.C. §§ 1589(a), 1589(b), 1590(a), and 1594(a) of the TVPA—that do not create civil causes of action. *See* Doc. 9, Am. Compl., ¶¶ 55–112. But the Court will draw all reasonable inferences in favor of Wen and construe her four causes of action as claims asserted under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), which allows a plaintiff to sue a defendant for violating the TVPA. *See* 18 U.S.C. § 1595(a) ("[A]n individual who is a victim of a violation of [the TVPA] may bring a civil action against the perpetrator."). The Court concludes that Wen stated a plausible claim for relief that SanQuest forced her to provide labor in violation of 18 U.S.C. § 1589(a). Accordingly, the Court also rejects SanQuest's argument that Counts 2, 3, and 4 of Wen's Amended Complaint should be dismissed because she failed to allege an underlying violation of the TVPA.

      *i. Wen stated a claim that SanQuest forced her to continue providing labor by threat of a serious financial harm.*

Wen alleges that SanQuest provided her labor to Artech by using threats of serious harm and threats to abuse the legal process. Doc. 9, Am. Compl., ¶ 58. 18 U.S.C. § 1589(a) prohibits anyone from:

> knowingly provid[ing] . . . the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

Further, the TVPA defines "serious harm" as "any harm . . . including . . . financial . . . harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor." 18 U.S.C. § 1589(c)(2). Thus, to survive SanQuest's Motion to Dismiss, Wen needs to allege facts that allow the Court to draw the reasonable inference that Wen faced threats of a financial harm serious enough to compel a reasonable person to continue working for SanQuest. The Court concludes that Wen has sufficiently alleged such a harm.

A financial harm can only constitute a serious harm if the harm is "in some way improper or illicit." *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2023 WL 359559, at *8 (W.D. Ky. Jan. 23, 2023) (quoting *Dale Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2021 WL 2476882, at *6 (S.D. Ohio Jun. 17, 2021)). When addressing whether financial harms are improper threats, courts consider factors such as (1) whether the threatened financial harms arise out of contractual terms that are enforceable under state law, *Carter*, 2023 WL 359559, at *8, and (2) the significance of the financial harm when compared with the employee's yearly wages. *See Carmen*, 2021 WL

2476882, at *7. Importantly, courts have recognized that "improper threats or coercion" can give rise to liability under the TVPRA, while "permissible warnings of adverse but legitimate consequences" do not. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012). Thus, under this approach, a plaintiff would not have a viable claim for forced labor if a company advised her that she would no longer receive her salary if she resigned, but a plaintiff would have a viable claim if a company threatened to steal money from her bank account unless she continued working for the company. *See Carter*, 2023 WL 359559, at *8–*9. The Court finds this approach persuasive.

Here, the first factor—whether the threatened financial harms arise out of contractual terms that are enforceable under state law—weighs in favor of finding that Wen stated a claim for forced labor because the Staffing Agreement's liquidated damages provision appears to be unenforceable. The Staffing Agreement[1] provides that it is "governed by the laws of the State of Texas." Doc. 16-1, Ex. 1, 5. So the Court must look to whether the liquidated damages provision is enforceable under Texas law. Under Texas law, courts only enforce liquidated damages provisions if they find "(1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). But if the liquidated damages are disproportionate to the party's actual damages, the provision is unenforceable under Texas law. *Polimera v. Chemtex Env't Lab'y, Inc.*, No.

---

[1] The Court can consider the Staffing Agreement at the pleadings stage because it was incorporated into Wen's Amended Complaint by reference. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quotations omitted)). Here, the Court can consider the Staffing Agreement because (1) it is referenced in Wen's Amended Complaint, Doc. 9, Am. Compl., ¶¶ 30–35, and (2) central to Wen's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

09-10-00361-CV, 2011 WL 2135062, at *4–*5 (Tex. App.—Beaumont May 19, 2011, no pet.) (mem. op.). In an at-will employment relationship, the employer is ordinarily not entitled to recover any actual damages if the employee resigns. *Cf. Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 401 (Tex. 2014) ("[N]o one can claim recovery of damages for the loss of an employment relationship he had no right to continue.").

Here, the "Staffing Agreement" included a liquidated damages provision requiring Wen to pay $35,000 if she resigned or otherwise breached the Staffing Agreement. Doc. 9, Am. Compl., ¶¶ 30, 32. Because Wen was an at-will employee, *id.* ¶ 27, SanQuest would not incur any actual damages if she resigned. *See E.I. Du Pont De Nemours & Co.*, 430 S.W.3d at 401. Thus, the liquidated damages provision would award SanQuest $35,000 when the company would ordinarily not be entitled to recover any damages. *See id.* Therefore, it appears that the liquidated damages provision in the Staffing Agreement is unenforceable because it provides for damages that are not "a reasonable forecast of just compensation." *Phillips*, 820 S.W.2d at 788. However, the Court declines to definitively rule on whether the provision is enforceable until after discovery has concluded. *Cf. id.* ("Sometimes, however, factual issues must be resolved before the legal question [of whether a liquidated damages clause is enforceable] can be decided."). But because the liquidated damages provision appears to be unenforceable, the first factor weighs in favor of finding that Wen has stated a claim for forced labor under the TVPRA.

The second factor—the significance of the financial harm when compared against the plaintiff's wages—also suggests that the $35,000 fine constitutes a serious financial harm because it is more than half of Wen's annual wages. One district court concluded that a plaintiff plausibly alleged a serious financial harm when he would be required to pay "six months' gross wages" to

terminate his employment agreement. *Javier v. Beck*, No. 13-CV-2926, 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014). While Artech paid Wen approximately $65 an hour, Wen was required to pay SanQuest $36.15 an hour for every hour she worked at Artech. Doc. 9, Am. Compl., ¶ 39. This meant Wen effectively made $28.85 an hour. *See id.* Wen has not alleged how many hours she worked a week. But if Wen worked 40 hours a week for 52 weeks a year, she would make $60,008, which means it would cost Wen at least 58% of her annual salary to resign from SanQuest. Therefore, the second factor also weighs in favor of finding that she plausibly alleged a serious financial harm. *See Javier*, 2014 WL 3058456, at *6.

Lastly, district courts around the country have found that liquidated damages provisions containing smaller fines than that contained in the Staffing Agreement were sufficient to state a claim for forced labor under the TVPRA. *See Byron v. Avant Healthcare Pros., LLC*, No. 6:23-CV-1645-JSS-LHP, 2024 WL 2304490, at *13 (M.D. Fla. Apr. 10, 2024), *report and recommendation adopted*, No. 6:23-CV-1645-JSS-LHP, 2024 WL 3738488 (M.D. Fla. Aug. 9, 2024) (collecting cases).

SanQuest argues that Wen was not forced to provide her labor or forced to continue to provide her labor because she voluntarily agreed to SanQuest's employment terms. Doc. 11, Mot., 5–6. Courts around the country have rejected this argument and have held a plaintiff's voluntary entry into an employment agreement does not preclude a finding that they were later forced to continue providing labor. *See, e.g., Carmen*, 2021 WL 2476882, at *6 ("[Defendant's] argument—that a freely entered contract . . . can *never* serve as the basis for a TVPA claim—also seems wrong. Contracts sometimes contain exit terms that are so one-sided or egregious that a reasonable person may feel compelled to remain in a position." (emphasis in original)). This holding appears consistent with the TVPA because the statute does not only prohibit conduct forcing someone to work—it also

prohibits conduct forcing someone "to *continue* performing labor." 18 U.S.C. § 1589(c)(2) (emphasis added). Thus, the text of the TVPA appears to contemplate a scenario where someone initially agreed to the terms of employment but is later forced to continue working when they would have otherwise left. Accordingly, the Court rejects SanQuest's argument that Wen was not forced to provide labor because she voluntarily signed the company's employment agreements.

In sum, the Court concludes that Wen has plausibly alleged SanQuest knowingly provided her labor to Artech under threats of serious harm in violation of 18 U.S.C. § 1589(a) because the Staffing Agreement's liquidated damages provision appears unenforceable under Texas law and because it would require Wen to pay more than half of her annual wages to resign from SanQuest.

Because the Court concludes that Wen stated a claim that SanQuest obtained her labor by means of threatening serious harm, the Court need not address the sufficiency of her allegations that SanQuest also threatened to abuse the legal process. *See* 18 U.S.C. § 1589(a)(2). Accordingly, the Court denies SanQuest's Motion to Dismiss as to Count 1 of Wen's Amended Complaint.

> *ii. The Court denies SanQuest's Motion to Dismiss Counts 2, 3, and 4 of Wen's Amended Complaint because Wen sufficiently alleged an underlying violation of the TVPA.*

SanQuest also moves to dismiss Counts 2, 3, and 4 of Wen's Amended Complaint, which allege that SanQuest violated 18 U.S.C. §§ 1589(b), 1590(a), and 1594(b) of the TVPA. Doc. 11, Mot. Count 2 alleges that SanQuest knowingly benefitted from participating in a venture that forced Wen to provide labor, in violation of 18 U.S.C. § 1589(b). Doc. 9, Am. Compl., ¶¶ 72–86. Count 3 alleges that SanQuest "knowingly recruited" Wen for forced labor in violation of the TVPA, 18 U.S.C. § 1590(a). *Id.* ¶¶ 87–100. And Count 4 alleges that SanQuest attempted to violate the TVPA, which is prohibited under 18 U.S.C. § 1594(a). *Id.* ¶¶ 101–12.

SanQuest's only argument in favor of dismissing Counts 2, 3, and 4 is that they each require

an underlying violation of § 1589(a), and Wen has failed to adequatley allege that SanQuest violated § 1589(a). *Id.* at 8–9. Because the Court concluded above that Wen plausibly alleged that she was forced to continue providing her labor in violation of § 1589(a), the Court rejects this argument. Accordingly, the Court denies SanQuest's Motion to Dismiss as to Counts 2, 3, and 4 of Wen's Amended Complaint.

B.      *Wen Fails to Allege the Existence of an Enterprise as Necessary to Maintain a RICO Claim.*

Wen next asserts three claims alleging that SanQuest violated 18 U.S.C. §§ 1962(c) and 1962(d) of the RICO statute. Doc. 9, Am. Compl., ¶¶ 113–86. The Court grants SanQuest's Motion to Dismiss as to Wen's three RICO claims because she fails to plausibly allege the existence of an enterprise separate from SanQuest.

"RICO claims require '1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993)). The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Fifth Circuit has further explained that an "enterprise can be either a legal entity or an association-in-fact." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000).

An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). In essence, "an association-in-fact enterprise is a group of persons associated together for a common

purpose of engaging in a course of conduct." *Id.* (quotations omitted). To allege that an enterprise is an association-in-fact, a plaintiff must plausibly allege that the organization "functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

Additionally, the Fifth Circuit has held that the defendant who allegedly engaged in racketeering—the RICO person—must be "distinct from the [RICO] enterprise" with respect to claims asserted under 18 U.S.C. §§ 1962(c) and 1962(d). *Id.* at 881. This "separate and distinct" requirement means that a plaintiff cannot claim that a company is both the RICO enterprise and the "RICO person" who engaged in racketeering. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

To put it simply, to assert claims under §§ 1962(c) and 1962(d), the plaintiff must allege the existence of a RICO enterprise that is separate and distinct from the defendant that allegedly violated the RICO statute. Because Wen alleges that SanQuest is the RICO person that engaged in a pattern of racketeering, Doc. 9, Am. Compl., ¶¶ 139, 167, 185, Wen must allege the existence of an enterprise that is separate and distinct from SanQuest. *See Whelan*, 319 F.3d at 229. Here, Wen presents two theories for what constitutes the separate and distinct RICO enterprise. First, Wen argues that there is an association-in-fact enterprise between SanQuest and Artech. *See* Doc. 16, Resp., 20–21. Second, Wen argues that three of SanQuest's employees formed a RICO enterprise. *Id.* at 22. The Court addresses each theory in turn.

*i. SanQuest and Artech were not a RICO enterprise.*

SanQuest and Artech were not a RICO enterprise because Wen alleges no facts suggesting that SanQuest and Artech were working together with the common purpose of coercing workers.

The only allegation discussing *any* interaction between SanQuest and Artech is that SanQuest "executed an employment contract" with Artech "on behalf of [Wen] without her consent or knowledge." Doc. 11, Am. Compl., ¶ 120. However, Wen does not allege that Artech knew she was being forced to work at Artech, nor does Wen allege that SanQuest and Artech had previously engaged in similar practices of obtaining forced labor that would allow the Court to draw the reasonable inference that the two companies shared a common purpose.

Indeed, Wen effectively concedes that the two companies did not share a common purpose by arguing that SanQuest "us[ed] Artech to unwittingly defraud" Wen. Doc. 16, Resp., 21. If Artech did not know of SanQuest's arrangement with Wen, Artech and SanQuest did not have a common purpose. Without any facts suggesting the two companies shared a common purpose, Wen has failed to allege the existence of an association-in-fact enterprise between SanQuest and Artech. *See Boyle*, 556 U.S. at 946.

Wen argues that SanQuest violated the RICO statute because it was not engaged in "normal business affairs" when the company signed Wen's name without her consent and that SanQuest's "unwitting enterprise" constituted a fraudulent scheme. Doc. 16, Resp., 21–22. But these arguments only speak to whether SanQuest—the RICO person—engaged in a pattern of racketeering. They fail to address the fundamental problem that Wen has not alleged sufficient facts for the Court to draw the reasonable inference that Artech and SanQuest shared a common purpose as necessary to sufficiently plead the enterprise element of Wen's RICO claims. *Boyle*, 556 U.S. at 946. Therefore, Artech and SanQuest are not a RICO enterprise.

> ii. *SanQuest's employees did not form an association-in-fact enterprise.*

Wen has failed to plead sufficient facts to plausibly allege that SanQuest employees Lena

Huang, Richard Wang, and Sanjana formed an association-in-fact enterprise. Wen argues that because these three employees engaged in illegal conduct that exceeded the scope of their employment with SanQuest, these three employees formed a RICO enterprise. Doc. 16, Resp., 22. It is not entirely clear whether Wen is arguing that SanQuest formed a separate RICO enterprise with its own employees—i.e., that SanQuest and these three employees formed an enterprise that is separate from the company itself—or whether Wen is arguing these three employees formed their own enterprise that does not include SanQuest. Regardless, the Court rejects both arguments.

First, Wen has not included sufficient facts to plausibly allege that Huang, Sanjana, and Wang formed an association-in-fact enterprise separate from SanQuest. "The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Foufas*, 867 F.2d at 881. Each allegation addressing Huang, Sanjana, and Wang involve them either performing SanQuest's obligations under the company's employment agreements or requiring Wen to perform her obligations under the agreements. Specifically, Wen alleges that Huang completed Wen's onboarding and required Wen to sign the Training and Marketing Agreement. Doc. 9, Am. Compl., ¶¶ 15–16. Wen next alleges that Sanjana instructed her to apply to numerous jobs. *Id.* ¶¶ 19–20. And Wen then alleges that she reimbursed SanQuest by making various payments to Wang. *Id.* ¶ 154. Thus, each allegation with respect to these three employees, at the very most, suggests that Huang, Sanjana, and Wang were associated only through SanQuest's business activities. Wen does not allege that these three employees had any association separate from their employment at SanQuest. Therefore, Wen fails to allege a RICO enterprise. *Foufas*, 867 F.2d at 881.

Wen argues that Huang, Sanjana, and Wang's association created a RICO enterprise because

they acted beyond the scope of their employments by allegedly committing criminal acts. Doc. 16, Resp., 22. However, Wen has not included any allegations in her Amended Complaint suggesting that Huang, Sanjana, and Wang acted outside the scope of their employment. As the Court discussed above, the only allegations with respect to Huang, Sanjana, and Wang suggest they were either performing SanQuest's obligations or requiring Wen to perform her obligations under the parties' employment agreements. The Court finds that their conduct was within the course of their employment with SanQuest. *See Foufas*, 867 F.2d at 881. Therefore, Wen has failed to allege sufficient facts to allow the Court to reasonably infer that Huang, Sanjana, and Wang created a RICO enterprise.

Second, Wen fails to allege any facts to support the conclusion that SanQuest was part of an enterprise with its employees. Wen has only alleged that these three employees trained her, helped her apply to jobs, or that they attempted to withdraw money from her bank account on SanQuest's behalf. Doc. 9, Am. Compl., ¶¶ 15–16, 19–20, 154. Allegations that a company's employees engaged in conduct in the course of their employment are insufficient to form a RICO enterprise, as discussed above. *See Foufas*, 867 F.2d at 881. Thus, Wen has not alleged any facts that would allow the Court to draw the reasonable inference that SanQuest, Huang, Sanjana, and Wang created a separate RICO enterprise.

In sum, Wen has failed to allege sufficient facts to allow the Court to draw the reasonable inference that there was a RICO enterprise separate from SanQuest. Because all of Wen's RICO claims require her to allege the existence of a separate RICO enterprise, the Court grants SanQuest's Motion to Dismiss as to Counts 5, 6, and 7 of Wen's Amended Complaint.

C.    *The Court Dismisses Counts 5, 6, and 7 of Wen's Amended Complaint with Prejudice.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quotations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

It would be futile to grant Wen leave to amend her Complaint for a second time. Wen already filed an Amended Complaint after SanQuest filed the company's first motion to dismiss that identified potential deficiencies in her pleadings. *See generally* Doc. 9, Am. Compl.; *see generally* Doc. 4, Mot. The Court finds that any additional amended complaints would likewise fail to allege a distinct RICO enterprise and Wen has not identified any additional facts she could plead to remedy this deficiency. Accordingly, it would be futile to grant Wen leave to amend. *See Stripling*, 234 F.3d at 873.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** SanQuest's Motion to Dismiss (Doc. 11). Specifically, the Court **DENIES** the Motion with respect to Counts 1, 2, 3, and 4 of Wen's Amended Complaint. The Court **GRANTS** the Motion with respect to Counts 5, 6, and 7 of Wen's Complaint and **DISMISSES** these claims with **PREJUDICE**. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), SanQuest must file an answer to Wen's Amended Complaint within **fourteen (14)** days of this Order.

SO ORDERED.

SIGNED: January 23, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE